IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

ALISON CASE, individually and as Personal Representative
of the Estate of JEFFREY LANE CASE, deceased,

     Plaintiff,

v.

CELEBRITY CRUISES, INC., a foreign corporation and
STUART COVE'S DIVE BAHAMAS, INC.

     Defendants

_____/

## **COMPLAINT DEMAND FOR JURY TRIAL**

The Plaintiff hereby sues Defendants and alleges as follows:

### **JURISDICTIONAL AND PRELIMINARY ALLEGATIONS**

1.    The Plaintiff, ALISON CASE as Personal Representative of the Estate of

JEFFREY LANE CASE, Deceased, is a citizen of Indiana. At the time of his death, JEFFREY

LANE CASE (now Deceased) was a citizen of Indiana and was the lawfully wedded husband of

ALISON CASE;

2.    Defendant, CELEBRITY CRUISES, INC. (hereinafter "Defendant" or

"CELEBRITY"), is a foreign entity with its principal place of business in Miami, Florida;

3.    Defendant, STUART COVE'S DIVE BAHAMAS (hereinafter STUART COVE),

is an entity based in Nassau Bahamas but engaged in substantial business activity within the

State of Florida by maintaining an ongoing business relationship with Florida-based cruise ship

1

companies, including Defendant CELEBRITY, and profiting from the sale of excursions to passengers traveling aboard these Florida-based cruise ships;

4.    Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the Admiralty or Maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendants;

5.    The causes of action asserted in this Complaint arise under General Maritime Law of the United States, as well as Florida state law to supplement the General Maritime Law claims, and the law of the Bahamas;

6.    At all times material hereto, Defendant, CELEBRITY, personally or through an agent:

    a.    Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b.    Engaged in substantial activity within this state;

    c.    Operates vessels in the waters of this state; and

    d.    Committed one or more of the acts stated in Florida Statues §§ 48.081, 48.181 and/or 48.193, which submits CELEBRITY to jurisdiction and venue of this Court.

7. The acts of Defendants set out in this Complaint occurred in whole or in part in this county and/or state;

8. CELEBRITY engaged in the business of providing to the public, and to Plaintiff and Decedent, for compensation, vacation cruises, including shore excursions, aboard the vessel the *CELEBRITY Equinox;*

9. CELEBRITY is subject to the jurisdiction of the Courts of this State and of this United States District Court;

10. At all times material hereto, STUART COVE operated the subject excursion which CELEBRITY promoted and sold as one of CELEBRITY's shoreside excursions to its passengers boarding its cruise ship in Florida;

11. At all times material hereto, STUART COVE was the agent, apparent agent, servant, and/or partner of CELEBRITY with respect to the subject shoreside excursion, and at all material times hereto STUART COVE acted within the course and scope of their agency, apparent agency, service and/or employment;

12. At all times material hereto, the activities of STUART COVE in Florida also satisfy the specific jurisdiction provision of Florida Statues § 48.193(1)(a), by the acts that include, but are not limited to, a) reaching out to Florida-based cruise lines, insurers, cruise industry associates and/or premium financing companies for purposes of operating, conducting, engaging in, or carrying on a business or business venture in this state; and/or b) contractually agreeing to indemnify Florida-based cruise lines (entities mostly located in Miami and Ft. Lauderdale) for any harm resulting to cruise passengers, thereby insuring a "person, property, or risk located within this state";

3

13.     At all times material hereto, STUART COVE engaged in substantial and not isolated activity within this state, including, but not limited to:  a) reaching out to cruise lines in Florida and establishing long-term partnerships with them; b) deriving a substantial portion of their revenues from their business with Florida-based cruise lines; c) periodically traveling to Miami to meet with cruise line executives for purposes of maintaining the business relationships and/or obtaining new business; d) procuring insurance through companies in Florida; e) maintaining Florida entities as "Agents of Record" for insurance purposes; f) agreeing to insure and indemnify entities in Florida; g) signing premium financing agreements with Florida entities in order to obtain a loan to pay for liability insurance premiums; h) having parts and/or supplies from Florida-based suppliers to operate their excursions; i) signing powers of attorney and/or appointing attorneys-in-fact in Florida to carry out their Florida operations; and j) participating in cruise industry trade shows  in Miami(e.g., Seatrade);

14.     At all times material hereto, CELEBRITY owned, operated, managed, maintained and/or controlled the vessel, the *CELEBRITY Equinox*;

15.     CELEBRITY promoted, sold, vouched for, and/or recommended to the Decedent, JEFFREY LANE CASE and the Plaintiff, ALISON CASE, a shoreside excursion, which is the subject of this lawsuit, titled "Snuba";

16.     STUART COVE entered into an agreement with CELEBRITY to provide the snuba excursion to CELEBRITY's passengers;

17.     The Snuba excursion consisted of taking CELEBRITY passengers on a coral reef scuba diving and snorkeling excursion in Nassau, Bahamas;

18.     This snuba excursion would be dangerous if it was not operated with properly trained individuals, adequate lifesaving and emergency procedures, and adequate equipment;

19.     The duty of CELEBRITY to exercise reasonable care for the safety of its passengers included exercising reasonable care in selecting safe excursions, researching the past safety history of said excursions, and warning passengers of any dangers associated with the excursions, as the passengers, including the Decedent and Plaintiff, relied on CELEBRITY's reputation, duties and representations to believe CELEBRITY properly vetted the excursion, and only sold excursions of companies with impeccable safety histories, and that CELEBRITY vouched for the safety of said excursion;

20.     STUART COVE at the time of the incident in question had a history of serious accidents and deaths that reflected that the company did not safely operate their business;

21.     CELEBRITY knew or should have known of the unsafe practices and history of Stuart Cove and should never have promoted or sold the excursion in question to its passengers including the Plaintiff and Decedent. By selling and promoting the subject excursion to its passengers, CELEBRITY knowingly placed its passengers, including Plaintiff and Decedent, at serious risk of suffering serious harm including death due to nature of the activity;

22.     Stuart Cove had a reputation for operating negligently and dangerously, and such could have been found out by CELEBRITY if they sufficiently investigated the safety aspects of the company they were selling to its passengers for profit and before vouching for its safety;

23.     Additionally, CELEBRITY employs numerous crew members and shoreside employees on its cruise ships and in its headquarters in Miami, Florida, who are responsible for issues of "tour safety." CELEBRITY is informed of and monitors all incidents when its passengers are reported to be injured during cruise-sponsored excursions. CELEBRITY obtains further feedback on its tour operators through Passenger Comment Cards. However, CELEBRITY merely uses that information to decide whether to provide a full or partial refund

to the complaining passenger. CELEBRITY does nothing to fix the root cause of the complaints about its excursion operator agents as was seen with the incident in question;

24.     CELEBRITY also monitors popular cruise websites such as *tripadvisor.com*. For over five years, comments on that website expressed opinions such as, "the boats will also need to be upgraded since they have poor maintenance as well. I am concerned that Stuart Cove will have a death on their hands if this behavior continues." Another comment stated, "getting back on the boat after the second dive was extremely disorganized and unsafe. Several of the people on our boat were extremely rusty on their dive skills. I still can't believe no one was injured!" These are just two of the many negative comments regarding the excursion company promoted and sold by CELEBRITY;

25.     Based on STUART COVE's history, and the nature of the activity passengers would be engaging in if they purchased the excursion in question, CELEBRITY should have performed a thorough investigation into the background of the company, including not only the type of snuba equipment they utilize, but also any safety features available on the boat in case anyone got hurt, the training they provided to the snuba instructors, the experience of the instructors, the safety standards they followed, and other safety measures that were being taken so that CELEBRITY could then be assured that the representations they were making to the public about the safety and quality of the excursion company were actually true;

26.     The Plaintiff and Decedent relied on the advertisements and representations made by CELEBRITY that it would only hire the safest company for its excursions, and believed that CELEBRITY was responsible for its excursions and/or the excursion companies were the agents of CELEBRITY in carrying out the excursion activity the cruise line was selling;

27.     Plaintiff and Decedent would not have purchased the excursion in question but for the representations and assurances made by CELEBRITY, which Plaintiff and Decedent relied on and also the fact that CELEBRITY had a legal duty to properly vet the safety and security of the excursion company;

28.     CELEBRITY embarked on a specific marketing campaign on its website and other distributed marketing materials geared to make passengers believe that the excursions sold by CELEBRITY were CELEBRITY excursions for which the Defendant would be responsible and for whom the Defendant vouched for the safety and quality of, carefully utilizing words such as "CELEBRITY CRUISES-affiliated excursion," "our shore excursion," and "Celebrity Cruises' shore excursions."

29.     CELEBRITY represented to the public that its excursions "adhere to the highest safety standards in the industry";

30.     Additionally, CELEBRITY promoted the excursions, advertised them, listed them, photographed them, represented that they are part of the cruise experience, allowed and encouraged payment of them onboard, provided an excursion desk with "advisors" about excursions, issued "Shore Excursion tickets" for the excursion with the CELEBRITY logo onboard at the excursion desk, charged these tickets to the passenger's cabin, organized its passengers to go on each excursion, specified assembly points for excursions, took passengers to the excursion, split a large percentage of the fee with the excursion operator, and represented that they, CELEBRITY, have made sure that the excursion is safe;

31.     During the excursion in question on or about April 5, 2019, both Plaintiff and Decedent kept on getting tangled in the air hose in the extremely choppy water. They asked for help multiple times, and expressed concern about the weight belt that Decedent was using that

was constantly slipping, causing his respirator to come out of his mouth because it was attached to the back of the weight belt. Plaintiff even complained to someone at STUART COVE that the equipment was defective. She informed them that she would be going back to the boat after Decedent became tangled once again;

32.     At some point on the swim back to the boat in very choppy conditions Decedent drowned. Plaintiff was compelled to personally try to rescue her husband until finally someone helped find him on the bottom of about 15-20 feet of water. Once on the boat, none of the employees knew how to do CPR, there was no Automated External Defibrillator (AED) on the boat and instead only a small first aid kit, there were no instructors present to help Decedent, and the proper medical care Decedent required was delayed;

33.     Instead, of recognizing this and immediately evacuating Decedent to get the appropriate care, the evacuation was delayed and the medical care which was provided was not appropriate emergency trauma treatment. The treatment of Decedent involved inappropriate handling in a seriously injured state and the Decedent was pronounced dead less than an hour after the incident;

34.     The excursion in question was clearly dangerous and unsafe. The company operating it (Stuart Cove) was not competent to safely operate the excursion. Stuart Cove had a known history of being unsafe and causing serious injuries and/or deaths from not safely operating its business;

35.     CELEBRITY should have known this in the exercise of the reasonable care for the safety of its passengers, and CELEBRITY should not have sold the excursion in question because of the known safety issues with Stuart Cove;

36.     CELEBRITY chooses which companies operates the excursions for passengers and choose and negotiates contracts with various providers of excursions all over the world including Nassau, Bahamas, the location of the snuba diving excursion in this case. CELEBRITY then coordinates and contracts with the operators of the excursion to arrange for passengers to participate in the excursions and contracts the operators of the excursion to receive the proceeds of the excursion and to pay the operators of the excursion their percentage;

37.     Plaintiff and Decent relied on CELEBRITY's representations and believed CELEBRITY had fulfilled it duty of reasonable care in choosing, selling the excursion, and advising of any dangers, as they were obligated by law;

38.     This action is both a survival action and a wrongful death action of a passenger under the General Maritime Law, Florida law, the law of the Bahamas, and any other law which may be deemed applicable;

## COUNT I
## NEGLIGENCE AGAINT CELEBRITY (THIS IS BASED ON DIRECT ACTS OF NEGLIGENCE BY CELEBRITY)

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-eight (38) as though alleged originally herein.

39.     At all times material hereto, Defendant, CELEBRITY, had a duty to exercise reasonable care for the safety of their passengers, including the Plaintiff and Decedent;

40.     CELEBRITY makes representations about the safety and security offered by excursions which are booked through CELEBRITY as opposed to excursions which the passenger can purchase on his or her own at the various destinations. CELEBRITY makes these representations in order for the passengers to rely on them and to choose the excursions which are promoted by and offered through the cruise line;

41.     Despite the representations by CELEBRITY as to the safety of the excursions it sold, CELEBRITY failed to properly or reasonably supervise and administer the excursion and/or properly or reasonably select the excursion operator. CELEBRITY failed to select a company properly certified, adequately trained, and reasonably safe. CELEBRITY also failed to inspect, monitor, and take whatever steps are reasonable under the circumstances in order to verify that the excursion was operated in a reasonably safe manner.

42.     On the date of the subject incident, CELEBRITY organized an excursion for its passengers to go scuba diving/snorkeling ("snuba diving") on the cruise. CELEBRITY advertised the excursion in brochures which were provided to passengers with their ticket information, advertised its excursion online, made announcements onboard the ship about the excursion, directed passengers to meet at a certain place for the excursion, had employees of CELEBRITY organize passengers who consented to go on the excursion, and required passengers' signatures and collected money on the ship for the excursion by charging the passengers' on board cruise line account.

43.     On the date of the subject incident, CELEBRITY had failed to inspect the equipment utilized in the dive on a regular basis, failed to require that the excursion operator have and maintain competent, trained, certified and mature employees (snuba diving instructors) to assist its divers, failed to inspect to insure that snuba diving excursions were conducted in a safe and proper manner and in full compliance with international scuba diving standards, failed to create and/or have a plan in place for emergency medical treatment and/or evacuation, and/or failed to provide emergency medical treatment and/or evacuation for CELEBRITY passengers injured on the snuba diving excursion. Accordingly, the diving equipment utilized at the time of

this dive was old and not properly serviced, and the diving environment and personnel did not operate within property safety guidelines;

44.     CELEBRITY either: (a) created the dangerous conditions, through its agents or employees; (b) had actual knowledge of the dangerous conditions; and/or (c) had constructive knowledge of the dangerous conditions;

45.     CELEBRITY had constructive knowledge of the dangerous conditions by, inter alia: (a) the length of time the dangerous conditions existed; (b) the size and/or nature of the dangerous conditions; and/or (c) the fact that the dangerous conditions,  or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity. Thus, the dangerous conditions were reasonably foreseeable and in the exercise of reasonable care CELEBRITY should have known about it.

46.     CELEBRITY owed a duty to its passengers to exercise reasonable care for their safety, and this included selling safe excursions properly vetted by CELEBRITY.

47.     CELEBRITY breached its duty of reasonable care as follows:

a.      Failing to provide adequate warning of the dangerous conditions of snuba diving; and/or

b.      Failing to choose an excursion operator that was using staff properly trained and qualified to provide a safe excursion for its passengers; and/or

c.      By making inaccurate representations about the safety of the excursion, including representations suggesting the excursion company in question followed the highest safety standards and was a safe company to operate the activity; and/or

d. Failing to determine whether the equipment being used was in good condition and regularly inspected for safety concerns; and/or

e. Failing to determine whether the personnel was properly trained and qualified for safety issues; and/or

f. Failing to check out thoroughly the Nassau Bahamas snuba diving excursion either initially and/or any regular basis; and/or

g. Failing to prevent passengers from going on an excursion with personnel who lacked any emergency training or plans to address a drowning situation; and/or

h. Selling an excursion operated by a company using old and/or improperly maintained equipment, untrained and/or improperly trained personnel, unsupervised personnel and/or insufficient numbers of personnel who work at the snuba excursion and/or who did not follow proper snuba diving safety protocols and procedures; and/or

i. By allowing CELEBRITY passengers to participate in the subject excursion where unreasonably dangerous conditions existed and failing to prevent or stop such participation; and/or

j. Failing to otherwise warn anyone, including the Plaintiff and Decedent, who participated in the subject excursion of the dangerous conditions; and/or

k. Failing to properly and reasonably train its employees in the proper methods of monitoring the activities of people on the snuba excursion, and posting warning notices of such dangers; and/or

l.    Failing to properly and reasonably monitor and control the activities of people in an area, especially an area where the cruise line knows is an area of dangerous conditions; and/or

m.    Failing to arrange excursions in safe and appropriate conditions; and/or

n.    Failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one in this case and utilizing or allowing a negligent method of operations; and/or

o.    Allowing ongoing, recurring, continuous and/or repetitive problems to occur or to remain which would cause incidents or injuries; and/or

p.    Representing to passengers including the Decedent herein that the snuba excursion was safe, reliable, and fully and properly licensed; and/or

q.    Failing to monitor excursion operators, their management, personnel, training, methods of operation, and equipment; and/or

r.    Failing to ensure the proper safety equipment, including an AED, was accessible during the subject excursion; and/or

s.    Failing to properly train excursion operators, their management and their personnel; and/or

t.    Failing to promulgate and enforce appropriate safety rules for excursion operators; and/or

u.    Failing to advise passengers of the known history of deaths with this same exact excursion company; and/or

v.      Failing to provide a plan for emergency medical evacuation and/or emergency medical treatment from if an incident of this type on an CELEBRITY excursion occurred; and/or

w.      Failing to provide emergency medical treatment and/or evacuation of CELEBRITY passengers if an emergency medical situation occurred at an CELEBRITY excursion such as the one in this case.

48.     The unsafe and dangerous nature of the excursion was known by CELEBRITY; and/or had existed for a sufficient length of time so that CELEBRITY should have known of it and was a continuous or repetitive problem thus giving notice to CELEBRITY.

49.     The nature of the excursion in question was sufficient to alert CELEBRITY, an experienced cruise ship company that had experienced many incidents of drowning during excursions sold by them,  to potential dangers a passenger would encounter if the excursion operator did not safely operate the excursion, and CELEBRITY should have known in the exercise of reasonable care of a shipowner that STUART COVE was in fact an excursion company that was not safe for the passengers;

50.     As a result of the CELEBRITY's negligence, Plaintiff, individually and as personal representative of the Estate of JEFFREY LANE CASE suffered and will suffer in the future: pain and suffering, loss of support; loss of the services of the Deceased, loss of nurture, guidance, care and instruction, loss of inheritance, mental anguish, loss of enjoyment of life, post-traumatic stress disorder and other mental and/or nervous disorders, and incurred medical expenses in the care and treatment of her injuries.  Plaintiff suffers mental anguish from the loss of her husband and the trauma and emotional damages from witnessing his death, as she was in the zone of danger at the time of the incident in question. The injuries are permanent or

continuing in nature and the Plaintiff ALISON CASE will suffer the losses and impairments in the future.  Decedent suffered pre-death pain and suffering as a result of the catastrophic medical event he sustained in the incident which led to his death;

WHEREFORE, the Plaintiff, ALISON CASE, Individually and as Personal Representative of the Estate of JEFFREY LANE CASE, respectfully demands judgment against the Defendant CELEBRITY Cruises for survival action damages and wrongful death damages allowable under the General Maritime Law, Florida law, the law of the Bahamas, and any other law which may be deemed applicable , as well as damages for Plaintiff ALISON CASE, including emotional harm and mental pain and suffering suffered as a result of witnessing the drowning and death of her husband and being in the zone of danger, and prejudgment interest and costs, and request a trial by jury of all issues, plus such other relief as may be just;

## COUNT II

### LIABILITY OF CELEBRITY BASED ON APPARENT AGENCY

Plaintiff, ALISON CASE, individually and as personal representative of the Estate of JEFFREY LANE CASE, deceased; hereby adopts and re-alleges each and every allegation in paragraphs one (1) through thirty-eight (38) as though alleged originally herein.

51.     Additionally and/or alternatively, Defendant CELEBRITY held out the owners and/or operators of the snuba diving excursion in Nassau Bahamas as its apparent agent. Defendant CELEBRITY represented to its cruise passengers, including but not limited to the Plaintiff and Decedent, that the snuba diving excursion operator was acting for the benefit of CELEBRITY. Included among these representations were the fact that:

a.   CELEBRITY used its name in connection with the advertising of STUART COVE's excursion: "CELEBRITY-affiliated excursion," "our shore excursion," "Celebrity Cruises' shore excursions"; and/or

b.   CELEBRITY made all arrangements for the subject excursion without effectively disclosing to the Plaintiff and Decedent that the subject excursion was being run by another entity (and/or entities); and/or

c.   CELEBRITY marketed the subject excursion using its company logo on its website and/or in its brochures and/or on its ship without effectively disclosing to Plaintiff and/or the Decedent that the subject excursion was being run by another entity (and/or entities); and/or

d.   CELEBRITY maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without effectively disclosing to the Plaintiff and Decedent that the subject excursion was being run by another entity (and/or entities); and/or

e.   Until the point the Plaintiff and Decedent actually participated in the subject excursion, the Plaintiff and Decedent's exclusive contacts concerning the subject excursion was with CELEBRITY; and/or

f.   CELEBRITY recommended to Plaintiff and Decedent to not engage in excursion tours or activities that are not sold by CELEBRITY as CELEBRITY has no familiarity with other tours or their operations; and/or

g.     The fee for the excursion was charged to Plaintiff and Decedent, and collected from the Plaintiff and Decedent, exclusively by CELEBRITY; and/or

h.     Plaintiff and Decedent received the receipt for the purchase of the subject excursion exclusively from CELEBRITY; and/or

i.     CELEBRITY reserved the right to cancel the excursions, including the subject excursion, at any time throughout the subject cruise due to lack of participants; and/or

j.     CELEBRITY's promotional material and information concerning excursions, including the subject excursion, represented that if a "ship affiliated tour is delayed, the ship will be notified and await the tour's return" and "in the event a tour that is not affiliated with Celebrity Cruises is delayed, it will be the guest's sole responsibility for making any necessary arrangements to return to port or their ship"; and/or

k.     Until the point the Plaintiff and Decedent actually participated in the subject excursion, the Plaintiff's and Decedent's exclusive contacts concerning the subject excursion was with CELEBRITY and/or CELEBRITY's onboard agents; and/or

l.     After CELEBRITY sold tickets for the subject excursion to Plaintiff and Decedent, CELEBRITY provided Plaintiff and Decedent with a CELEBRITY contact for any issues or questions that may arise regarding the subject excursion, again not disclosing to Plaintiff and Decedent any other entity involved in the excursion; and/ or

m.   CELEBRITY intentionally used language for the sale of the excursion that suggested the excursion was a CELEBRITY-operated excursion for which CELEBRITY was responsible for any actions of any individuals or entities that might be employed in connection with the excursion.

52.   As a result of these numerous and pervasive representations, the Plaintiff and Decedent had a reasonable belief that the snuba diving excursion operator had the authority to act for the benefit of CELEBRITY. The Plaintiff and Decedent reasonably acted upon such beliefs in purchasing tickets for the Nassau, Bahamas snuba diving shore excursion, and did so to their detriment, resulting in the death of JEFFREY LANE CASE.

53.   CELEBRITY intentionally and deliberately told Plaintiff and Decedent it would not be responsible for any tour operators not affiliated with CELEBRITY, which suggested it was responsible for any operators of a CELEBRITY-affiliated excursion;

54.   Additionally, CELEBRITY selected STUART COVE as its agents and held them out as its agents. Thus, at all times hereto, CELEBRITY was responsible for, and liable for, the actions of its apparent agents (STUART COVE) with respect to the subject excursion;

55.   It was reasonable to believe that STUART COVE was acting as CELEBRITY's employees and/or agents because the Plaintiff and Decedent booked, paid, and made all of the necessary arrangements for the subject excursion with CELEBRITY. CELEBRITY's actions caused Plaintiff and Decedent to believe that STUART COVE had authority to act on CELEBRITY's behalf.  At no time did STUART COVE represent to the ship's passengers or the Plaintiff and Decedent in a meaningful way that STUART COVE was not agents or employees of CELEBRITY;

56.     The Plaintiff's and Decedent's reasonable reliance was detrimental because Plaintiff and Decedent would not have booked, paid for and/or participated in the subject excursion had the Plaintiff and Decedent known that the excursion was not operated by CELEBRITY, and if CELEBRITY had said clearly that the operator was not backed by CELEBRITY, was not "our excursion," was not a "CELEBRITY-affiliated" excursion, and advised Plaintiff and Decedent instead if there were any safety issues CELEBRITY would take the position the excursion operator was an independent contractor, for which CELEBRITY would deny all responsibility for an accident and claim the Plaintiff and Decedent's only recourse would be to sue an unknown foreign entity in a foreign country if an accident happened. The very specific representations made by CELEBRITY created the unequivocal message that if a passenger purchased the recommended excursions that were sold by CELEBRITY, they would be purchasing a CELEBRITY excursion that was operated by CELEBRITY and/or their agents/employees;

57.     STUART COVE owed a duty to its divers including the Decedent herein to provide a reasonably safe snuba diving experience. STUART COVE breached those duties and were negligent, which CELEBRITY is liable for by virtue of apparent agency, as follows:

        a.      Failing to provide a safe excursion; and/or

        b.      Failing to provide adequate warning of the dangerous conditions of snuba diving; and/or

        c.      Failing to use competent and qualified operators and safe and proper procedures; and/or

d.     Failing to inspect the equipment including scuba tanks and related equipment used in the Nassau, Bahamas snuba excursion on a regular basis to determine its safety and reliability; and/or

e.     Failing to inspect the personnel and the procedures used not only to hire but also to train and maintain safety of the Nassau, Bahamas snuba diving excursion; and/or

f.     Providing old equipment on the excursion; and/or

g.     Offering an excursion with untrained and/or unsupervised and/or insufficient numbers of personnel; and/or

h.     Failing to otherwise warn anyone including the Plaintiff and Decedent who participated in the subject excursion of the dangerous conditions; and/or

i.     Failing to properly and reasonably monitor and control the participants of its excursion; and/or

j.     Failing to ensure the excursion had proper safety equipment including an AED and its employees knew how to do CPR; and/or

k.     Failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one in this case and instead utilizing or allowing negligent methods of operation; and/or

l.     Allowing ongoing, recurring, continuous and/or repetitive problems to occur or to remain which would cause incidents or injuries; and/or

m.     Representing to excursion participants, including the Decedent herein, that the Nassau, Bahamas snuba excursion was safe, reliable, and fully and properly licensed; and/or

n.     Failing to choose and vet or inspect their dive instructors and staff; and/or

o.     Failing to properly train their staff, their management and their personnel; and/or

p.     Failing to promulgate and enforce appropriate safety rules for the subject excursion; and/or

q.     Failing to provide a plan for emergency medical evacuation and/or emergency medical treatment if an incident of this type occurred; and/or

r.     Failing to properly supervise Decedent; and/or

s.     Failing to recognize Decedent was in danger; and/or

t.     Failing to rescue Decedent; and/or

u.     Failing to provide appropriate rescue efforts; and/or

v.     Failing to save Decedent; and/or

w.     Continuing the excursion under unsafe conditions.

58.     The negligent conditions were created by STUART COVE and it was reasonably foreseeable a passenger could drown and die as a result of the unsafe conditions that existed;

59.     The negligent conditions had existed for a sufficient length of time so that STUART COVE should have known of it; and was a continuous or repetitive problem thus giving notice;

60.     CELEBRITY is liable for all or some of the above acts and/or omissions by STUART COVE, as STUART COVE was the apparent agents of CELEBRITY with respect to

the subject excursion, and said negligence caused and/or contributed to the Plaintiff being severely injured while participating in the subject excursion, and to Decedent being severely injured which led to his death;

61.     At all times material hereto, CELEBRITY is estopped to deny that STUART COVE was its agent(s), apparent agent(s), and or employee(s);

62.     STUART COVE's negligence was a direct and proximate cause of the Plaintiff injuries and damages and Decedent's death, all of which CELEBRITY is liable by virtue of STUART COVE acting as agents or apparent agents of CELEBRITY;

63.     The actions of STUART COVE were willful, wanton, and in reckless disregard for the safety of their passengers. Such flagrant recklessness warrants the imposition of punitive damages against CELEBRITY, as they are responsible for the actions of the subject excursion they had arranged, and were reckless in allowing their passengers to participate on STUART COVE's snuba excursion;

64.     Because STUART COVE was the apparent agent of CELEBRITY as herein alleged, CELEBRITY is vicariously liable for the damages caused by the above-described negligence and other wrongful conduct of STUART COVE;

65.     As a result of the negligence of STUART COVE for which CELEBRITY is liable, Plaintiff, individually and as personal representative of the Estate of JEFFREY LANE CASE suffered and will suffer in the future: pain and suffering, loss of support; loss of the services of the Deceased, loss of nurture, guidance, care and instruction, loss of inheritance, mental anguish, loss of enjoyment of life, post-traumatic stress disorder and other mental and/or nervous disorders, and incurred medical expenses in the care and treatment of her injuries. Plaintiff suffers mental anguish from the loss of her husband and the trauma and emotional

damages from witnessing his death, as she was in the zone of danger at the time of the incident in question. The injuries are permanent or continuing in nature and the Plaintiff ALISON CASE will suffer the losses and impairments in the future.  Decedent suffered pre-death pain and suffering as a result of the catastrophic medical event he sustained in the incident which led to his death;

WHEREFORE, the Plaintiff, ALISON CASE, Individually and as Personal Representative of the Estate of JEFFREY LANE CASE, respectfully demands judgment against the Defendant CELEBRITY Cruises for survival action damages and wrongful death damages allowable under the General Maritime Law, Florida law, the law of the Bahamas, and any other law which may be deemed applicable , as well as damages for Plaintiff ALISON CASE, including emotional harm and mental pain and suffering suffered as a result of witnessing the drowning and death of her husband and being in the zone of danger, and prejudgment interest and costs, punitive damages and request a trial by jury of all issues, plus such other relief as may be just;

## COUNT III

### NEGLIGENCE AGAINST DEFENDANT TOUR OPERATOR COMPANY, STUART COVE

The Plaintiff re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-eight (38) as though alleged originally herein;

66.     On or about April 5, 2019, STUART COVE and/or their agents, servants, and/or employees breached their duty to provide the Plaintiff with reasonable care under the circumstances;

67.     On or about April 5, 2019, the Plaintiff, including Decedent, were injured and killed due to the fault and/or negligence of STUART COVE, and/or their agents, servants, and/or employees that include, but are not limited to the following:

    a.    Failing to provide a safe excursion; and/or

    b.    Failing to provide adequate warning of the dangerous conditions of snuba diving; and/or

    c.    Failing to use competent and qualified operators and safe and proper procedures; and/or

    d.     Failing to inspect the equipment including scuba tanks and related equipment used in the Nassau, Bahamas snuba excursion on a regular basis to determine its safety and reliability; and/or

    e.    Failing to inspect the personnel and the procedures used not only to hire but also to train and maintain safety of the Nassau, Bahamas snuba diving excursion; and/or

    f.    Providing old equipment on the excursion; and/or

    g.    Offering an excursion with untrained and/or unsupervised and/or insufficient numbers of personnel; and/or

    h.    Failing to otherwise warn anyone including the Plaintiff and Decedent who participated in the subject excursion of the dangerous conditions; and/or

    i.    Failing to properly and reasonably monitor and control the participants of its excursion; and/or

j.     Failing to ensure the excursion had proper safety equipment including an AED and its employees knew how to do CPR; and/or

k.     Failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one in this case and utilizing or allowing negligent method of operations; and/or

l.     Allowing ongoing, recurring, continuous and/or repetitive problems to occur or to remain which would cause incidents or injuries; and/or

m.     Representing to excursion participants, including the Decedent herein, that the Nassau, Bahamas snuba excursion was safe, reliable, and fully and properly licensed;

n.     Failing to choose and vet or inspect their dive instructors and staff; and/or

o.     Failing to properly train their staff, their management and their personnel; and/or

p.     Failing to promulgate and enforce appropriate safety rules for the subject excursion; and/or

q.     Failing to provide a plan for emergency medical evacuation and/or emergency medical treatment if an incident of this type occurred. and/or

r.     Failing to properly supervise Decedent; and/or

s.     Failing to recognize Decedent was in danger; and/or

t.     Failing to rescue Decedent; and/or

u.     Failing to provide appropriate rescue efforts; and/or

v.     Failing to save Decedent; and/or

w.     Continuing the excursion under unsafe conditions.

25

68.     The negligent conditions were created by STUART COVE; were known to STUART COVE; and had existed for a sufficient length of time so that STUART COVE should have known of them; and were continuous or repetitive problems thus giving notice;

69.     All or some of the above acts and/or omissions by STUART COVE and/or their agents, servants and/or employees, caused and/or contributed to the Plaintiff being severely injured while participating in the subject excursion. In addition, the negligent acts described above resulted in causing serious injuries to the decedent, JEFFREY LANE CASE, which resulted in his death;

70.     As a direct and proximate result of STUART COVE's negligence, Plaintiff, individually and as personal representative of the Estate of JEFFREY LANE CASE suffered and will suffer in the future: pain and suffering, loss of support; loss of the services of the Deceased, loss of nurture, guidance, care and instruction, loss of inheritance, mental anguish, loss of enjoyment of life, post-traumatic stress disorder and other mental and/or nervous disorders, and incurred medical expenses in the care and treatment of her injuries.   Plaintiff suffers mental anguish from the loss of her husband and the trauma and emotional damages from witnessing his death, as she was in the zone of danger at the time of the incident in question. The injuries are permanent or continuing in nature and the Plaintiff ALISON CASE will suffer the losses and impairments in the future.  Decedent suffered pre-death pain and suffering as a result of the catastrophic medical event he sustained in the incident which led to his death;

WHEREFORE, the Plaintiff, ALISON CASE, Individually and as Personal Representative of the Estate of JEFFREY LANE CASE, respectfully demands judgment against the Defendant CELEBRITY Cruises for survival action damages and wrongful death damages allowable under the General Maritime Law, Florida law, the law of the Bahamas, and any other

law which may be deemed applicable , as well as damages for Plaintiff ALISON CASE,

including emotional harm and mental pain and suffering suffered as a result of witnessing the

drowning and death of her husband and being in the zone of danger, and prejudgment interest

and costs, and request a trial by jury of all issues, plus such other relief as may be just.

Dated: May 1, 2020.

Respectfully submitted,

By: _____*s/ Brett Rivkind*_____
BRETT RIVKIND, ESQ.
FBN: 373486
seainjury@rivkindlaw.com
RIVKIND, MARGULIES & RIVKIND, P.A.
66 West Flagler Street
Suite 700
Miami, FL 33130
Telephone: (305) 374-0565
Facsimile: (305) 539-8341
Attorneys for Plaintiff