**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 20-21826-Civ-WILLIAMS/TORRES

ALISON CASE, individually and as Personal
Representative of the Estate of JEFFREY
LANE CASE, deceased,

      Plaintiff,

v.

CELEBRITY CRUISES INC.,
STUART'S COVE'S DIVE BAHAMAS, INC.,
and NASSAU UNDERSEA ADVENTURES,
LTD., d/b/a STUART COVE'S DIVE BAHAMAS,

      Defendants.

_____/

## REPORT & RECOMMENDATION ON DEFENDANT'S
## MOTION TO DISMISS

This matter is before the Court on Celebrity Cruise Inc.'s, ("CCI") motion to dismiss [D.E. 23] Alison Case's ("Plaintiff") second amended complaint [D.E. 18]. Plaintiff responded to CCI's motion on October 5, 2020 [D.E. 25] to which Plaintiff replied on October 13, 2020 [D.E. 29]. The Honorable Judge Kathleen M. Williams referred CCI's motion to the undersigned Magistrate Judge on September 24, 2020. [D.E. 24]. Therefore, the matter is now fully briefed and ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, CCI's [D.E. 23] motion to dismiss should be **GRANTED in part** and **DENIED in part**.

## I.    FACTUAL BACKGROUND

Plaintiff commenced this action on May 1, 2020 [D.E. 1] after her husband (the "Decedent") passed away while on a voyage of CCI's *Celebrity Equinox* and participating in a shore excursion in Nassau, Bahamas.  Plaintiff filed an amended complaint on June 5, 2020 [D.E. 6] and a second amended complaint on August 31, 2020 [D.E. 18].  The shore excursion, called a Snuba excursion, was operated by Nassau Undersea Adventures, LTD., d/b/a Stuart Cove's Dive Bahamas ("Stuart Cove", and with CCI, "Defendants") and sold through CCI.  The Snuba excursion consisted of CCI passengers being taken by boat to a coral reef.  [D.E. 18, ¶ 24].  The passengers could then swim, snorkel, or scuba drive at the reef.  *Id.*   Even though the Decedent was not a strong swimmer compared to his wife, Plaintiff and the Decedent were attracted to the Snuba excursion because CCI promoted it as a safe and easy excursion.  They thus purchased the Snuba excursion directly from CCI at its excursion desk onboard the *Celebrity Equinox.  Id.*, at ¶ 43.

It is not explicitly clear if the Decedent went scuba diving during the Snuba excursion, but he did use scuba diving type equipment such as a weight belt, a 40-foot line, and a respirator.  *Id.*, at ¶¶ 47, 48.  Although the Decedent did use a floating device to stay above water as well.  *Id.*, at ¶¶ 44, 46.  The Decedent and his wife, however, still found it very difficult to swim during the Snuba excursion.  This was due to extremely rough waters, the weight belt constantly coming loose, the 40-foot line getting tangled, and "constant losing of the mouthpiece for the respirator."  *Id.*, at ¶¶ 47, 48.  Feeling in danger, the Decedent and Plaintiff attempted to get help

from the dive instructor, but no help was provided.  They therefore decided to swim back to the boat unassisted.

During this attempt back to safety, the Decedent was caused to go underwater. *Id.*, at ¶ 51.  Plaintiff called for help and then tried to save her husband alone. Eventually, another passenger came to assist her, and then after an employee from Stuart Cove joined the rescue, the Decedent was retrieved from the bottom of the ocean floor, approximately 15 to 20 feet below the water.  *Id.*, at ¶¶ 53, 54.  Once on the boat, Plaintiff learned that none of the employees of Stuart Cove knew CPR and there was no automatic defibrillator onboard.  Approximately 45 minutes to an hour later, the Decedent received medical treatment on land.  Tragically, resuscitation efforts were unsuccessful, and the Decedent was pronounced dead.  *Id.*, at ¶ 58.

Plaintiff's second amended complaint alleges the following five causes of action: (1) negligence against CCI; (2) negligent infliction of emotional distress against CCI; (3) negligent misrepresentation against CCI; (4) negligence against Stuart Cove; and (5) apparent agency or agency by estoppel—claiming CCI is vicariously liable for the damages caused by the negligence of Stuart Cove.

## II.    *LEGAL STANDARD*

In ruling on a defendant's motion to dismiss, a court takes the allegations in the complaint as true and construes the allegations "in the light most favorable to the plaintiff[ ]."  *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)).  "When considering a motion to dismiss, all facts set forth in [a plaintiff's] complaint 'are to

be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). A motion to dismiss under Rule 12(b)(6) "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557 (alteration in original). Factual content gives a claim facial plausibility. *Id.* "[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [a plaintiff]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

Additionally, where a cause of action sounds in fraud, Federal Rule of Civil Procedure 9(b) must be satisfied to the more relaxed standard of Rule 8. *See U.S. ex. rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1309-10 (11th Cir. 2002); *Gayou*

4

*v. Celebrity Cruises, Inc.*, 2012 WL 2049431, at *3 (S.D. Fla. June 5, 2012). Rule 9(b) provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but that "[m]alice, intent, knowledge, and other conditions of a person's mind shall be averred generally." Fed. R. Civ. P. 9(b). Rule 9(b) is satisfied if a plaintiff pleads:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

### III.   ANALYSIS

CCI's motion seeks to dismiss Counts I (negligence), III (negligent misrepresentation), and V (apparent agency and agency by estoppel) because they either constitute a shotgun style of pleading or otherwise fail to state a claim for which relief can be granted. Although not explicitly pled by Plaintiff in a separate count, CCI also moves to dismiss a claim of negligent hiring and/or retention for a failure to plead the elements of a *prima facie* case. Alternatively, CCI argues certain damages requested by Plaintiff must be stricken from the second amended complaint because the Death on the High Seas Act ("DOHSA") applies and Plaintiff has failed to allege conduct by CCI for which punitive damages are warranted.

Plaintiff opposes CCI's motion in its entirety and claims that she has presented sufficient facts to state a claim for each count alleged against CCI, DOHSA does not

preempt her requested damages for Count II, and the actions of Stuart Cove call for CCI to pay punitive damages. Before we turn to the merits, we must consider the principles of general maritime law to inform the analysis that follows.

### A.   *Principles of General Maritime Law*

Claims arising from alleged tort actions aboard ships sailing in navigable waters are governed by general maritime law. *See Keefe v. Bahama Cruise Line, Inc.*, 861 F.2d 1318, 1320 (11th Cir. 1989). Absent an applicable statute, general maritime law is "an amalgam of traditional common-law rules, modifications of those rules and newly created rules" drawn from state and federal sources. *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864-65 (1986). Maritime law may be supplemented by state law principles so long as application of the state law does not place "substantive admiralty principles" at risk. *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1426 (11th Cir. 1997); *see also Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 210 (1996); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409 (1953).

"In a claim based on an alleged tort occurring at an offshore location during the course of a cruise, federal maritime law applies, just as it would for torts occurring on ships sailing in navigable waters." *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1392 (S.D. Fla. 2014). To state a negligence claim under federal maritime law, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual

harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). Given these general maritime principles, we consider the parties' arguments in turn.

### B.     <u>*Whether the Second Amended Complaint is a Shotgun Pleading*</u>

CCI's leading argument is that Plaintiff's second amended complaint should be dismissed because it constitutes an impermissible shotgun pleading. A shotgun pleading is defined by "the failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading." *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005). The Eleventh Circuit has found that "[t]he typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear. Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002); *see also Ferrell v. Durbin*, 311 F. App'x 253, 259 (11th Cir. 2009).

Shotgun pleadings are also often characterized by factually unsupported claims and frequently fail to specify which defendant is responsible for each act alleged. *Beckwith*, 146 F. App'x at 372 ("The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a shotgun pleading"). Shotgun pleadings make it virtually impossible to know which allegations of fact are intended to support which claims for relief. *See Beckwith*, 146 F. App'x at 372; *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). As a result, shotgun pleadings impede the orderly, efficient, and economic disposition of disputes as well as a court's overall ability to administer

justice.  *See Byrne v. Nezhat*, 261 F.3d 1075, 1128-31 (11th Cir. 2001), *abrogated on other grounds* by *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997).

The Eleventh Circuit has instructed district courts to turn away shotgun pleadings as fatally defective.  *See B.L.E. ex rel. Jefferson v. Georgia*, 335 F. App'x 962, 963 (11th Cir. 2009).  To allow such a pleading would place an unjustifiable burden on a court to take on the virtually impossible task of "ascertain[ing] what factual allegations correspond with each claim and which claim is directed at which defendant."  *Beckwith*, 146 F. App'x at 373.  Indeed, district courts are not required to "sift through the facts presented and decide for [itself] which were material to the particular cause of action asserted."  *Strategic Income Fund*, 305 F.3d at 1296 n.9.

CCI complains that each count incorporates sixty-eight paragraphs of generic factual allegations and that this renders the second amended complaint a shotgun pleading.  While it is true that "[a] complaint incorporating a long list of general allegations into each claim for relief will . . . constitute a shotgun pleading if it fails to specify which facts are relevant to each claim," this generally justifies dismissal when a count incorporates all the general allegations of a preceding count.  *Small v. Amgen, Inc.*, 2 F. Supp. 3d 1292, 1296 (M.D. Fla. 2014) (citing *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1333 (11th Cir. 1998)); *see also Great Fla. Bank v. Countrywide Home Loans, Inc.*, 2011 WL 382588, at *2 (S.D. Fla. Feb. 3, 2011) ("[T]he basic form of Plaintiff's Third Amended Complaint is the same as those criticized by the Eleventh Circuit. Each cause of action 'realleges the

foregoing allegations as if fully set forth herein,' such that the Second Cause of Action incorporates the First, the Third Cause of Action incorporates the First and Second Causes of Action, and so on, through the five causes of action.").

Yet, that is not what occurred here.  Plaintiff merely included a list of preliminary factual allegations that led to her injury and then set forth her theories of liability.  The second amended complaint's incorporation of general allegations in each count  is therefore distinguishable from the four most common types of shotgun pleadings that justify dismissal:

> [W]e have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.  The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.  The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.  Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.  The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (footnotes omitted).

The stronger argument, however, is that Plaintiff has commingled a general negligence claim and a negligence hiring and/or retention claim within Count I, making it victim to the third type of shotgun pleading.   Surprisingly, Plaintiff not only acknowledges this improper comminglingly in Count I, she embraces it.   She does so in defending against CCI's alternative argument that the potential claim of negligent hiring and/or retention lacks the elements of a *prima facie* case.   For instance, she states that "[a]lthough Plaintiff did not assert a separate cause of action titled negligent hiring and/or retention [in Count I] . . . the factual allegations in the Second Amended Complaint would support [such] a claim."   [D.E. 25, p. 12]; [D.E. 18, ¶ 84(a).[1]

CCI's shotgun pleading argument against Count I is thus well taken, and tacitly unopposed in part, because "[e]ach theory of negligence is a separate cause of action that must be asserted independently and with corresponding supporting factual allegations."  *Tang v. NCL (Bahamas) Ltd.*, 2020 WL 3989125, at *2 (S.D. Fla. July 14, 2020) (citing *Givens v. Carnival Corp.*, 2020 WL 977934, at *2 (S.D. Fla. Feb. 28, 2020)); *see also* Fed. Civ. P. 10(b) (requiring a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.").   CCI's motion to dismiss Count I should therefore be **GRANTED without prejudice** so that Plaintiff can separate her theories of negligence liability into different counts.   *See, e.g., Thanas v. Royal Caribbean Cruises Ltd.*, 2019 WL 1755510, at *2 (S.D. Fla. Apr. 19, 2019) ("Through a single 'negligence' count, Thanas

---

[1]     We also highlight that Plaintiff commingles negligent misrepresentation in Count I, which is redundant with Count III.  [D.E. 18, ¶ 84(b)].

asserts, without limitation, theories of liability for failure to investigate, failure to instruct, failure to warn, and negligent retention. These are separate causes of action that must be asserted independently and with supporting factual allegations.") (citing *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337, n.2 (S.D. Fla. 2012) (dismissing maritime negligence claim that "epitomizes a form of 'shotgun' pleading," where the plaintiff alleged that Defendant owed a duty of "reasonable care under the circumstances," and then "proceed[ed] to allege at least twenty-one ways in which Defendant breached this duty"); *Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016) ("Simply alleging that Carnival owed Plaintiff a duty of 'reasonable care' in a conclusory fashion, while also pleading ["forty-one"] alleged breaches that purport to impose a heightened duty upon Carnival, is not sufficient to state a valid negligence claim under maritime law," and holding that "the burden will remain on Plaintiff to review her Complaint and ensure that each factual allegation is supported by law and plausible facts, and is alleged in good faith."); *Gayou*, 2012 WL 2049431, at *5-6, n.2 (ordering a plaintiff to amend a complaint to "separately allege an independent count" for various theories of liability that were lumped into a single maritime negligence claim); *Flaherty v. Royal Caribbean Cruises, Ltd.*, 2015 WL 8227674, *3 n.3 (S.D. Fla. Dec. 7, 2015)).

### C.   *Count III - Negligent Misrepresentation*

Next, Plaintiff alleges in Count III that CCI made false statements and omissions regarding the shore excursion which caused the Decedent and Plaintiff to purchase the excursion. A negligent misrepresentation claim must allege:

> (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation.

*Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1352-53 (S.D. Fla. 2016) (citing *Holguin v. Celebrity Cruises, Inc.*, 2010 WL 1837808, at *1 (S.D. Fla. May 4, 2010)).

Negligent misrepresentation, a subset of fraud, is subject to the heightened pleading standard of Rule 9(b).  *See Gayou*, 2012 WL 2049431, at *7 (dismissing an allegation of negligent misrepresentation because the complaint was not temporally precise under Rule 9(b)); *see also Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) ("Rule 9(b)'s heightened pleading standard requires that the complaint set forth . . . precisely what statements were made in what documents or oral representations.").  This requires a plaintiff to establish the 'who, what, when, where, and how' of the fraud."  *Ceithaml*, 207 F. Supp. 3d at 1353 (citing *Garfield v. NDC Health Corp.*, 466 F. 3d 1255, 1262 (11th Cir. 2006)).

In other words, when pleading a fraud claim, a cause of action must allege "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud."  *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016) (citing *Garfield*, 466 F.3d at

1262).[2]

Here, Plaintiff alleges CCI negligently misrepresented that: (1) the Snuba excursion was safe and easy, (2) Stuart Cove was fully insured, (3) the excursion was a safer and better alternative, and (4) CCI properly vetted and selected the excursion and operators.  [D.E. 18, ¶ 106(a)-(d)].  Plaintiff also alleges that CCI negligently omitted that Stuart Cove would require waivers fully disclaiming any and all liability. [D.E. 18, ¶ 106(e)].[3]  Plaintiff contends these were misrepresentations because CCI knew, respectively, (1) the Snuba excursion was not safe and easy because it involved strong ocean currents and that Stuart Cove was not qualified to safely operate the excursion, (2) Stuart Cove was not fully insured, (3) the excursion was not a better and safe alternative, and (4) CCI did not properly vet the excursion and Stuart Cove.

CCI first argues that Plaintiff fails to allege any facts that the representations were false.  This argument is unavailing because Plaintiff alleges specific facts how the statements are false.  For instance, Plaintiff alleges: (1) the exact statements that

---

[2]    Courts have applied Rule 9(b) to a wide-range of fraud claims, whether the allegations stem from fraudulent concealment, common law fraud, or a variation thereof.  *See, e.g.*, *Hendley v. Am. Nat'l Fire Ins. Co.*, 842 F.2d 267, 269 (11th Cir. 1988) (concluding that Rule 9(b) was not satisfied when plaintiff "steadfastly refused to offer specifics" and "never earmarked any facts as demonstrative of fraud"); *Friedlander v. Nims,* 755 F.2d 810, 813-14 (11th Cir. 1985) (concluding that although a Rule 9(b) dismissal is a "severe sanction," plaintiff's decision to ignore the court's "sound and proper" recommendations about how to correct the pleading deficiencies concerning the scope of an employee's authority warranted dismissal); *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 970-71 (5th Cir. 1981) (affirming Rule 9(b) dismissal because "the complaint includes only conclusory allegations of fraudulent concealment").

[3]    Plaintiff's allegation in paragraph 106(f) is the opposite of what Plaintiff alleges 106(d).

are alleged to be misleading or false; (2) the sources of the allegedly misleading materials; (3) where and when the allegedly misleading or false statements were made; (4) and how the statements are false and misleading. The allegations indeed provide CCI with the respective sources of the representations and facts supporting Plaintiff's claims that misrepresentations were made to her and the Decedent. *See Doria v. Royal Caribbean Cruises, Ltd.*, 393 F. Supp. 3d 1141, 1145 (S.D. Fla. 2019) (denying motion to dismiss negligent misrepresentation claim with similar allegations).

CCI also argues that a representation that an excursion is "safe" cannot form the foundation of a negligent misrepresentation claim. Current case law, however, holds that an alleged misrepresentation about an excursion being safe can be a recognizable negligent misrepresentation claim. *See Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1364, 1370 (S.D. Fla. 2019) (denying motion to dismiss negligent misrepresentation claim based on "safety"); *See Gayou*, 2012 WL 2049431, at *8 (denying motion to dismiss negligent misrepresentation claim regarding "safety" when cruise operator "touted and promoted the zip-lining excursion's safety").

Therefore, we recommend that CCI's motion to dismiss Count III should be **DENIED**.

### D.   <u>*Count V – Apparent Agency or Agency by Estoppel*</u>

Plaintiff next claims that CCI is vicariously liable for Stuart Cove's negligence in Count V under a theory of apparent agency or agency by estoppel. To plead a negligence claim premised upon apparent agency, a plaintiff must allege: (1) the

principal made some sort of manifestation causing a third party to believe that the agent had authority to act for the benefit of the principal; (2) that such belief was reasonable; and (3) that the plaintiff reasonably acted on such benefits to his detriment. *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1371 (S.D. Fla. 2005); *Smith-Russo v. NCL (Bahamas) Ltd.*, 2017 WL 5565613, at *12 (S.D. Fla. July 26, 2017).

Apparent agency is so similar to agency by estoppel that, when interpreting Florida law, the Eleventh Circuit does not even consider the two separately. *See Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1078 n.15 (11th Cir. 2003) ("Whetstone also argues that the doctrine of agency by estoppel applies. That doctrine, however, is so similar to apparent authority that there is no significant difference between them, we do not consider agency by estoppel separately") (internal citation and quotation marks omitted). That is, "[u]nder Florida law, agency by estoppel . . . embraces the primary elements of a representation by the principal, reliance on the representation by the claimant, and a change of position by the claimant in reliance on the representation." *United Bonding Ins. Co. v. Banco Suizo–Panameno, S.A.,* 422 F.2d 1142, 1146 (5th Cir. 1970) (citations omitted).

Here, Plaintiff has alleged the following facts that support an apparent agency between Defendants: CCI sold the Snuba excursion ticket directly to Plaintiff, CCI made all the arrangements for the excursion, CCI marketed the Snuba excursion using its company logo, CCI maintained an excursion desk on its ship, and CCI reserved the right to cancel the excursion. *See Storm v. Carnival Corp.*, 2020 WL

6293346, at *7 (S.D. Fla. Sept. 10, 2020), *report and recommendation adopted*, 2020 WL 6290351 (S.D. Fla. Oct. 27, 2020) (denying motion to dismiss apparent agency claim with similar allegations of apparent agency).

On the other hand, CCI asserts that the excursion ticket, CCI's website, and the shore excursion's brochure contain disclaimer language that Stuart Cove is an independent contractor and was the operator of the Snuba excursion.[4]  According to CCI, this requires us to dismiss the agency claim as a matter of law.  These disclaimers alone, however, are not enough because an entity is not an "independent contractor" just because that is what someone calls it.  *See Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1237-38 (11th Cir. 2014) (declining to determine, at the motion to dismiss stage, if an onboard doctor was an independent contractor when the passenger ticket stated that medical personnel were independent contractors) (citing *Cantor v. Cochran*, 184 So. 2d 173, 174 (Fla. 1996) ("[independent contractor] status depends not on the statements of the parties but upon all the circumstances of their dealings with each other.")); *see also State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1303 (S.D. Fla. 2018) ("As to the alleged . . . misrepresentations, this is a highly factual inquiry that is generally left for the finder of fact.").  "[E]xistence of any agency relationship is a question of fact under general maritime law." *Franza*, 772 F.3d at 1237-38.

---

[4]    CCI also, in a terse conclusory fashion, suggests Count V should be dismissed because the underlying negligence claim against Stuart Cove lacks factual allegations.  CCI's argument, however, completely fails to make any specific argument.  We thus decline the invitation from CCI to make a *sua sponte* argument for it.

Therefore, the Court must still look at all the circumstances, and in doing so, Plaintiff has pled sufficient facts suggesting that the Snuba excursion was in fact a CCI excursion.   Additionally, CCI's argument fails because the cases it references were almost all decided on a motion for summary judgment and after a complete development of the factual record.   *See, e.g., Wolf v. Celebrity Cruises Inc.*, 683 F. App'x 786, 798 (11th Cir. 2017). (affirming district court's decision to grant summary judgment in cruise line's favor).   That is, while CCI invites us to consider the content of the underlying documents, we decline to resolve a factual dispute on a motion to dismiss because it should be reserved for summary judgment or trial.   *See Ceithaml*, 207 F. Supp. 3d at 1356 ("Celebrity argues that Ceithaml's apparent agency theory, even if successfully pled as a negligence claim, must fail because the shore excursion ticket, shore excursion brochure, and passenger ticket contract all release Celebrity from liability.   However, consideration of these releases would be premature at the motion to dismiss stage as the release of liability is more properly considered an affirmative defense.") (citing Fed. R. Civ. P. 8(c)(1)).

Because Plaintiff has adequately alleged facts supporting an apparent agency relationship between the Defendants, CCI's motion to dismiss Count V should be **DENIED**.[5]

---

[5]   It would also be inappropriate to consider the passenger ticket contract and Snuba excursion ticket on a motion to dismiss because it is not "so central to Plaintiff's claim as to compel the Court to stray from the four corners of the complaint at this stage of the litigation." *Aronson*, 30 F. Supp. 3d at 1397.

E.    ***The Death on the High Seas Act & Punitive Damages***

CCI last moves to have the Court strike requested damages in the second amended complaint that are (1) not allowable under DOHSA and (2) punitive.  First, CCI argues that non-pecuniary damages and wrongful death damages that may be allowable under general maritime law, the Florida Wrongful Death Act, or the laws of the Bahamas are preempted by and not available under DOHSA.  In other words, CCI argues that Plaintiff may only recover damages that are permitted by DOHSA.

Section 30302 of DOHSA provides that "[w]hen the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible" and that "[t]he action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative."  46 U.S.C. § 30302.  If DOHSA applies, recovery is expressly limited to pecuniary losses.  *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1314 (S.D. Fla. 2019), *report and recommendation adopted*, 2019 WL 2254962 (S.D. Fla. Mar. 21, 2019) (citing *Sanchez v. Loffland Bros. Co.*, 626 F.2d 1228, 1230 (5th Cir. 1980) ("DOHSA specifically limits recoverable damages to those pecuniary in nature.")).  It is also well settled that DOHSA preempts conflicting state wrongful death statutes and makes itself the exclusive remedy.  *See Ford v. Wooten*, 681 F.2d 712, 716 (11th Cir. 1982) ("Where a cause of action exists for wrongful death under DOHSA, no additional action exists under general maritime law for wrongful

death."); *Offshore Logistics, Inc., v. Tallentire,* 477 U.S. 207, 231 (1986) (holding that damages provided in DOHSA could not be supplemented under state law).

In response, Plaintiff makes no argument that DOHSA does not preempt her damages claimed in paragraph 8, Counts I, III, and V, and only notes that DOHSA does not apply to her individual claim of negligent infliction of emotional distress against CCI in Count II.  Oddly, this has nothing to do with CCI's motion.  Because Plaintiff does not explicitly oppose the motion and DOHSA applies here, Plaintiff's motion to strike all of Plaintiff's requests for damages in paragraph 8 and in the wherefore clauses of Counts I, III, and V should be **GRANTED with prejudice**.  *See Kennedy*, 385 F. Supp. 3d at 1318.  ("Because we find that DOSHA applies as a matter of law to all claims alleged in the complaint, any demand for relief that seeks non-pecuniary losses should be dismissed and/or stricken as being contrary to DOHSA . . . .").

Second, CCI contends that Plaintiff has failed to allege conduct on the part of CCI for which punitive damages are warranted or could ever be awarded.[6]   Thus, CCI moves to strike Plaintiff's demand for punitive damages in Counts II and V.  The Eleventh Circuit has concluded that punitive damages are only "available in exceptional circumstances such as those very rare situations of intentional misconduct."  *Kennedy*, 385 F. Supp. 3d at 1329 (citing *Crusan v. Carnival Corp.*, 2015 WL 13743473, at *7 (S.D. Fla. Feb. 24, 2015)).  To demonstrate intentional

---

[6]     We note that the majority of CCI's argument extends beyond its 20-page limit. under Local Rule 7.1.  While the undersigned sidestepped this procedural deficiency this *one* time, CCI is reminded to strictly comply with the Local Rules going forward.

misconduct, a plaintiff must allege that a "defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct." *Mee Industries v. Dow Chemical Co.*, 608 F.3d 1202, 1220 (11th Cir. 2010) (quoting Fla.Stat. § 768.72(2) (2005)).

Here, Plaintiff's allegations wholly fail to allege intentional misconduct on the part of CCI. Plaintiff again does not explicitly oppose the merits of CCI's motion but argues that Stuart Cove's conduct alleged in Count V makes CCI vicariously liable for punitive damages. However, Plaintiff fails to cite to any legal authority nor make any legal argument how CCI can be liable for punitive damages for Stuart Cove's alleged intentional misconduct. To be clear, we do not determine if Stuart Cove's actions were intentional based on the allegations because that inquiry is irrelevant for adjudicating this motion. Because Plaintiff has failed to allege that CCI's conduct warrants the award of punitive damages, CCI's motion to strike Plaintiff's demand for punitive damages in Counts II and V should be **GRANTED with prejudice**.

## IV.   CONCLUSION

For the foregoing reasons, we **RECOMMEND** as follows:

1. CCI's motion to dismiss Count I should be **GRANTED with leave to amend**;

2. CCI's motion to dismiss Count III and V should be **DENIED**; and

3. CCI's motion to strike damages preempted by DOHSA and punitive damages against it should be **GRANTED with prejudice**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 11th day of December, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge